# In the United States Court of Federal Claims

Case No. 09-572C
FOR PUBLICATION
Filed: June 10, 2010

* * * * * * * * * * * * * * * * * * * * * * * * * *
|  |  |
|---|---|
| **ALLSTAR MAYFLOWER, LLC, ET AL.,** | * Motion to Dismiss, Interstate Commerce |
|  | * Act (ICA), 49 U.S.C. § 14705, |
| *Plaintiffs,* | * Contracts Dispute Act (CDA), 41 U.S.C. |
|  | * §609, *Inter-Coastal Xpress, Inc. v.* |
|  | * *United States*, 296 F.3d 1357 |
|  | * (Fed Cir. 2002). |
| v. |  |
| **THE UNITED STATES,** |  |
| *Defendant.* |  |

* * * * * * * * * * * * * * * * * * * * * * * * * *

Alan Wohlstetter, Attorney, Gwnedd, PA, for Plaintiffs.

*Karen V. Goff*, Trial Attorney with whom were *Tony West*, Assistant Attorney General, *Jeanne E. Davidson*, Director, *Brian M. Simkin*, Assistant Director, U.S. Department of Justice, Commercial Litigation Branch, Civil Division, Washington, DC and *Samuel W. Morris* and *Lisa M. Satterfield*, U.S. Army Legal Services Agency, Arlington, VA, Of Counsel, for Defendant.

## OPINION and ORDER

**SMITH**, Senior Judge:

Before the Court is Defendant's Motion to Dismiss, or in the Alternative, a Motion for a More Definite Statement.  Defendant alleges that the present complaint filed by the Plaintiffs is governed by the Interstate Commerce Act (ICA), 49 U.S.C. § 14705 (2006), and as such, Plaintiffs' claims are time-barred by the three year statute of limitations.  The Court agrees and hereby **GRANTS** Defendant's Motion to Dismiss.

## I.  FACTS

Plaintiffs are a group of Transportation Service Providers (TSPs) that contracted with the Surface Deployment and Distribution Command (SDDC) to provide transportation services.  SDDC

is a Department of Defense (DOD) organization responsible for, among other things, managing the procurement of domestic and international personal property shipment programs. To facilitate these programs, the SDDC solicits qualified carriers to submit rates for international and domestic shipments of personal property for certain periods of time and interested TSPs tender rates to be effective during this time.

On May 9, 2005, SDDC issued International Rate Solicitation I-16 (IW05) soliciting qualified carriers to submit rates for the international winter procurement period of October 1, 2005 through March 31, 2006. On May 15, 2005, the SDDC issued Domestic Rate Solicitation I-16 (DW05) soliciting qualified carriers to submit rates for the domestic winter procurement period of November 1, 2005 through April 30, 2006. The Plaintiffs were all approved carriers and provided service under one or both of these procurements.

In order to participate in the solicitation, each TSP was required to participate in the PowerTrack program administered by a commercial bank, U.S. Bank National Association (U.S. Bank). Under the PowerTrack program, U.S. Bank served as a middle man for the TSPs and SDDC and charged the TSPs a one-percent fee. This fee was mutually agreed to be reimbursed by the SDDC to the TSPs. *See Stevens Van Lines, Inc. v. United States*, 80 Fed. Cl. 276, 281 (2008).

On April 14, 2009 and June 8, 2009 Plaintiffs filed a claim with the SDDC requesting reimbursement of the PowerTrack fees charged to them by the U.S. Bank. The contracting officer requested additional information from Plaintiffs. Instead, Plaintiffs filed their claim in this Court on August 28, 2009 under 28 U.S.C. §2501 and the Contract Disputes Act (CDA), 41 U.S.C. §609.

## II. DISCUSSION

Defendant argues that the complaint must be dismissed on the ground that Plaintiffs' claims are time-barred by the three-year statute of limitations in the ICA. On the other hand, Plaintiffs contend that the claims before the Court are claims for fees, not claims for transportation charges and, therefore, are not subject the three-year statute of limitations of the ICA but instead that the claims are governed by the CDA. The Court must, therefore, answer two questions. First, does the ICA govern this case? Second, if the ICA applies, is this case timely filed? For the reasons set forth below, the Court holds that the ICA trumps the CDA in this case, and as such, the claims before it are time-barred.

### *A. The Interstate Commerce Act Governs Plaintiffs' Claims*

The ICA, which was enacted in 1887, provides for a "civil action to recover charges for transportation or service provided by [a common] carrier," including transportation for the United States. 49 U.S.C. 14705(a), (f). The statute further provides that a common carrier may sue the Government under the statute if it brings the civil action within "3 years from the later date of – (1) payment of the rate for the transportation or service involved; (2) subsequent refund for overpayment of that rate; or (3) deduction made under section 3726 of title 31." 49 U.S.C. 14705(f). The statute

was enacted with the goal of eliminating discrimination in the provisioning of interstate transportation services. *Inter-Coastal Xpress, Inc. v. United States*, 296 F.3d 1357, 1361 (Fed. Cir. 2002).

In *Inter-Coastal*, a case heavily relied upon by the Defendant and a case directly on point, the Federal Circuit explicitly stated that the ICA "govern[s] all actions seeking the payment of money for the charges owed on contracts for transportation services between common carriers and the government." *Id.* at 1366. In that case, the Federal Circuit held that claims against the United States for "holdover" charges, payments allegedly owed by the Government for requiring a common carrier to pick up a shipment one day and deliver it the following day, were governed by the ICA. *Id.* at 1359-60. In fact, the Federal Circuit rejected the plaintiff's assertions that the CDA applied to its claims, holding that the more specific provisions of the of the ICA trumped the general provisions of the CDA. *Id.* at 1369-71. By doing this, the Federal Circuit arrived at a bright-line test, removing the speculation as to the jurisdictional time frame for filing a complaint in Federal court. *Id*. at 1367-68.

In this case, Plaintiffs assert jurisdiction under the CDA rather than the ICA. Plaintiffs allege that the bank service fees paid by the Plaintiffs are not transportation charges. Plaintiffs argue that the ICA does not apply, but instead only applies to claims for amounts due for transportation services under the procurement. Due to the fact that the Plaintiffs could not bill for the reimbursement because the charges would have been rejected since they were not for transportation charges under the procurement, the ICA cannot apply. Further, Plaintiffs allege that the ICA applies only to claims by carriers for undercharges for transportation services or recovery of monies deducted by the government from amounts claimed.

The affirmative language of the ICA, and *Inter-Coastal*, clearly establishes that the ICA is the sole statutory authority governing jurisdiction in this Court for all charges or payments of money owed under a transportation service contract. Plaintiffs' claims arise out of, and in fact, could not exist but for the transportation service contracts with the SDDC. In that regard, the claims for PowerTrack fees are tantamount to Inter-Coastal's claim for "holdover charges." In *Inter-Coastal* the transportation service contract required the Government to pay charges, in addition to customary shipment fees, for "holdovers." *See id*. at 1360-61. Similarly, in this case, the SDDC was required to pay charges, on top of shipment fees, for the PowerTrack offsets during the IW05 and DW05 procurements. Thus, the "bright-line rule" established in *InterCoastal* makes it clear that the ICA governs Plaintiffs' claims for charges incurred under the IW05 and DW05 procurements. To hold otherwise would lead to an endless and metaphysical parsing of the phrase "transportation service charge." Would charges for gas, tires, truck rest stops, and tolls be transportation services? How about gas taxes? The congressional intent behind the ICA makes it clear that this was the kind of uncertainty that Congress intended to end.

*B. Plaintiffs' Claims are Time-Barred*

In order to fall within this Court's jurisdiction, a claimant must file within the applicable statute of limitations. *Soriano v. United States*, 352 U.S. 270, 273-74 (1957). If the claims are not timely filed, they must be dismissed. *Ewer v. United States*, 63 Fed. Cl. 396, 399 (2004).

Plaintiffs are before the Court requesting reimbursement of charges the were incurred during the IW05 and DW05 procurement periods. Under the ICA, the statute of limitations is three years from the date of "payment of the rate for the transportation or service involved." 49 U.S.C. § 14705(f). In determining the starting point for the ICA's three-year filing period, the Federal Circuit has stated that "payment occurs when the government pays all that it believes it owes on a shipment during the ordinary course of contract performance." *Inter-Coastal Xpress*, 296 F.3d at 1365. The complaint indicates that April 30, 2006 was the last date that Plaintiffs could have provided services under the IW05 and DW05 procurements. Therefore, to meet the jurisdictional requirements of the ICA, Plaintiffs must demonstrate that each final payment for their transportation services occurred within three years of the date of filing this complaint.

Plaintiffs' complaint was filed on August 28, 2009. However, April 30, 2006 was the last date that any of the Plaintiffs could have provided services under the procurements. Thus, even if it is assumed that the SDDC payments were not made until the last day covered by the transportation contract, April 30, 2006, the running of the statute of limitations would have begun at the latest on that date. That would mean that a complaint in this matter would have needed to have been filed on or before April 30, 2009. However, the complaint was not filed until August 28, 2009. As such, the complaint must be dismissed as untimely filed.

Plaintiffs raise the argument that the claims did not become ripe until this Court's decision in *Stevens Van Lines* issued on September 23, 2008. Thus, according to the Plaintiffs, the clock did not begin to run until September 23, 2008. The Court cannot agree. The language of the ICA and the controlling law is specific; the time begins to run "when the government pays all that it believes it owes on a shipment during the ordinary course of contract performance." *Inter-Coastal Xpress*, 296 F.3d at 1365. Further, rarely do Court decisions trigger the running of a statute of limitations.

### III. CONCLUSION

For the above reasons, the Court hereby **GRANTS** Defendant's Motion to Dismiss. The Clerk is directed to enter judgment accordingly. Each party shall bear its own costs.

**It is so ORDERED**.

   s/Loren A. Smith
LOREN A. SMITH,
Senior Judge